**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JARS Holdings, LLC d/b/a JARS Cannabis, | ) | CASE NO.  2:22-cv-11102-DML-DRG |
| | ) | |
| Plaintiff, | ) | JUDGE  David M. Lawson |
| | ) | |
| v. | ) | |
| | ) | |
| Hempnotize LLC d/b/a Glass Jar Cannabis | ) | |
| and Glass Jars, | ) | PLAINTIFF'S        RESPONSE       IN |
| | ) | OPPOSITION     TO    DEFENDANT'S |
| Defendant. | ) | MOTION TO DISMISS |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff JARS Holdings, LLC d/b/a JARS Cannabis ("JARS" or "Plaintiff"), respectfully

submits the following brief in opposition to defendant Hempnotize LLC d/b/a Glass Jar Cannabis

("Glass Jar" or "Defendant") motion to dismiss:

## I.        INTRODUCTION

This case is a result of Glass Jar's willful federal and state trademark infringement, unfair

competition, and violations of the Michigan Consumer Protection Act.  Glass Jar is thus subject to

liability for using, without any authorization whatsoever, a service mark legally registered to

JARS.  Glass Jar attempts to evade liability for its infringement by filing a motion to dismiss (the

"Motion") based solely on speculation, conjecture, and incorrect legal analysis.

In the Motion, Glass Jar first argues that the Complaint should be dismissed because JARS

purportedly admits both in the Complaint and in a photograph submitted to the United States Patent

and Trademark Office ("PTO") that JARS uses its state and federally registered JARS trademark

illegally.  Glass Jar is unequivocally wrong.  JARS makes no such admission.  Glass Jar then

1

argues that the Michigan Consumer Protection Act ("MCPA") is inapplicable to any business subject to regulatory oversight. This argument is an overly broad generalization without any basis. Simply put, the Motion fails to provide any basis to dismiss any counts alleged in the Complaint, and therefore should be denied in its entirety.

## II.   FACTUAL BACKGROUND

JARS owns United States Service Mark Registration No. 6,267,355 for the word mark "JARS" in standard characters for use with retail store services featuring hemp-based products and smokers' articles, namely cigarette papers, matches, vaporizers, flavorings, and lighters (the "'355 Registration"). JARS also owns Michigan State Service Mark Registration Nos. 802342669 and 802432529 for the JARS word mark and JARS logo. The Michigan state registrations are registered for use with retail store services featuring hemp-based products and smokers' articles, CBD products and hemp-based products. Compl. ¶¶ 5, 7 (collectively with the '355 Registration, the "JARS Marks"). JARS has used the JARS Marks continuously in commerce since at least as early as March 2019. Compl. ¶ 21.

On April 26, 2019, JARS filed an intent-to-use application with the PTO to register the word mark JARS. Compl. ¶ 5, Ex. B. The PTO published the mark for opposition on August 13, 2019. Decl. of Christopher Royce Ex. 1, at. 10. No opposition was filed, and on August 8, 2019, the PTO issued a Notice of Allowance giving JARS six months within which to file a Statement of Use proving use of the JARS service mark in commerce. Royce Decl. Ex. 1, at 10. JARS then filed its Statement of Use on April 7, 2020, with a date of first use for the services identified in the application of January 31, 2020 (i.e., retail store services featuring hemp-based products and smokers' articles, namely cigarette papers, matches, vaporizers, flavorings, and lighters). Royce Decl. Ex. 1, at 40-50. Examining Attorney Linda Blohm rejected JARS' evidence of use on the

bases that "[s]howing the applied-for mark from inside a retail store does not support retail store services[,]" and, "[u]se of the applied-for mark on a wall above product does not support retail store services, nor does showing the applied-for mark on clothing and other products." Royce Decl. Ex. 1, at 10. She gave JARS six months to file a verified substitute specimen showing the mark in actual use in commerce for the services identified in the application. Royce Decl. Ex. 1, at 9. JARS filed its verified replacement proof of use on September 21, 2020. Royce Decl. Ex. 1, at 18-28. Examining Attorney Blohm reviewed the specimen, found that it supported use in commerce and issued a Notice of Acceptance of Statement of Use on January 7, 2021. Royce Decl. Ex. 1, at 13. On February 9, 2021 the PTO issued the '355 Registration.

In December 2021, Glass Jar adopted and began using the GLASS JAR designation and its accompanying logo with virtually identical services to those services registered with the JARS Marks at its retail store located at 14733 S. Telegraph Road, Monroe, Michigan. The GLASS JAR mark is confusingly similar to the JARS' Marks, and, so much so that it is, in fact, causing confusion, among the public, and to customers to the detriment of JARS. Compl. ¶¶ 27, 29.

JARS has recently expanded its business under the JARS Marks by opening new Michigan retail locations in Monroe, Battle Creek, Center Line, Flint, Jackson, Leoni Township, and Mount Clemens. JARS' Monroe Michigan store at 15519 S. Telegraph Rd., is only approximately 1.5 miles from Glass Jar's Monroe store located at 14733 S. Telegraph Rd. Despite its close proximity to the JARS Monroe Michigan store, and despite not having any authorization from JARS, Glass Jar has used, and continues to use the GLASS JARS marks. Moreover, Glass Jar failed and refused, and continues to fail and refuse, to cease use of the GLASS JARS Marks despite JARS' demands. Compl. ¶¶ 20, 34, 35.

### III.    LAW AND ARGUMENT

### A.    Legal Standard

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004).   A complaint is not required to provide detailed factual allegations.  *Id*.  In reviewing a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in plaintiff's favor. *Evans-Marshall v. Bd. Of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005).  It is the defendant's burden to show that the plaintiff has failed to state a claim for relief. *Carver v. Bunch*, 946 F.2d 451, 454—55 (6th  Cir. 2005).  As demonstrated below, JARS' complaint easily satisfies these requirements.

### B.    The PTO Did Not Erroneously Issue JARS' Registration

Glass Jar concedes that pursuant to 15 U.S.C. §1115, a registered trademark, like the Jars Marks, is prima *facie e*vidence of the registered mark's validity.  Def's Mot. 9.  Glass Jar further concedes that a registered trademark carries with it a presumption of lawful use and registration. *Id*.  Despite these admissions, Glass Jar collaterally attacks the '355 Registration by claiming JARS uses it not with the services identified in its registrations, but with federally illegal marijuana products.  Based on such alleged illegal use, Glass Jar asks this Court to dismiss the Complaint and cancel the '355 Registration.

Glass Jars argues that the PTO issued the '355 Registration in error because: (i) JARS purportedly references the word "marijuana" in its Complaint; and (ii)  despite using the word "hemp" in the Application for the '355 Registration, JARS allegedly submitted "an image of CBD

products as proof of use in commerce" (which would be, according to Glass Jar, illegal). Glass Jars' arguments are entirely without merit.

### (i)   JARS' Purported Use of The Term "Marijuana" In The Complaint Is Not An Admission That The '355 Registration Is Used In Violation of the Law

Glass Jar engages in sleight of hand when it states that "Plaintiff's Complaint unequivocally states that, since January 31, 2020, it has utilized the JARS Marks in the promotion and sale of marijuana products. [Complaint ¶¶ 7, 18, 21.]" Def.'s Mot. 10. JARS makes no such admission. In Paragraph 7 of the Complaint, JARS simply recites the services identified in its Michigan Service Mark Registrations using the words "hemp-based" and "Cannabis." JARS uses the word "marijuana" in Paragraph 18 solely when identifying the State of Michigan Marijuana Regulatory Agency. In Paragraph 21 of the Complaint, JARS states that it has used the JARS logo in substantially the same visual representation since January 21, 2021, and the JARS word mark in the same visual representation since March 10, 2019. These are not admissions of past or present illegal use – unequivocal or otherwise. The only way Glass Jar's argument is remotely plausible is if the terms "cannabis" and "marijuana" are synonymous. They are not.

### (ii)   Cannabis, Cannabis Derivatives, Hemp, And Marijuana Can Be Legal If They Fall Within Certain Exemptions Identified In The 2018 Farm Bill

Glass Jar relies extensively on *In Re Morgan Brown*, 119 U.S.P.Q. 2d 1350, WL 4140917 (T.T.A.B. July 14, 2016) for the broad proposition that a trademark may not be registered if it is used for the sale of marijuana. Glass Jar's reliance on *Brown* is misplaced. *Brown* was decided two years prior to the enactment of the 2018 Farm Bill, which changed the definition of the term marijuana to allow for the sale of cannabis plants and derivatives with certain percentages of THC.

The 2018 Farm Bill, which was signed into law on December 20, 2018, amends the AMA and changes certain federal authorities relating to the production and marketing of "hemp," defined as "the plant Cannabis sativa L and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and

salts of isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3% THC on a dry-weight basis." Section 297A. These changes include removing "hemp" from the CSA's definition of marijuana, which means that cannabis plants and derivatives such as CBD that contain no more than 0.3% are no longer controlled substances under the CSA.

PTO Exam-Guide 1-19, Section II (citing 7 U.S.C. § 1639o(1)). Trademark applications filed after December 20, 2018 that identify goods[1], encompassing CBD, marijuana, or other cannabis products can now be lawful. *Id.* It is the same for service mark applications that identify services involving cannabis. CBD or marijuana. *Id.* The PTO will examine service mark applications for compliance with the 2018 Farm Bill. *Id.* Service mark applicants refused registration will have the option of overcoming the refusal by (among other things) amending the filing date and basis for the application, and amending the identification of services to specify that the involved cannabis contains less than 0.3% THC on a dry weight basis. *Id.*

Glass Jar's conflation of the term "cannabis" with the term "marijuana" is implausible. The terms are not synonymous. Even if they were, marijuana is not per se unlawful pursuant to the 2018 Farm Bill. 7 U.S.C. § 1639o(1). Glass Jar's reliance on *Brown*, which was decided <u>*two years prior*</u> to the enactment of the 2018 Farm Bill for the proposition that marijuana is *per se* unlawful, is entirely disingenuous and contrary to the PTO's own examination guidelines.

Even assuming *arguendo* that JARS' use of the term cannabis in the Complaint was an admission that JARS used and is using the '355 Registration with marijuana, it would not constitute evidence of a per se violation of federal law, since under the 2018 Farm Bill, certain types of marijuana products are legal. Glass Jar's supposed proof of illegal use does not constitute clear and convincing evidence required to establish unlawful use. Glass Jar's argument that the Complaint should be dismissed and the '355 Registration cancelled have no merit.

---

[1] The '355 Registration is a service mark that identifies services provided by JARS under the mark.

(iii)     **The Photo Submitted By JARS In Support Of Its Application For The '355 Registration Contains No Evidence Of Unlawful Use.**

In the Motion, Glass Jar argues that JARS submitted an image in support of its application for the '355 Registration that is somehow evidence of unlawful use.  JARS submitted the image below as evidence of its use of the JARS service mark:



Royce Decl. Ex. 1, at 49.  Based on the above photograph, Glass Jar argues that JARS uses the '355 Registration unlawfully and the PTO issued the '355 Registration erroneously.  Glass Jar is wrong.

The PTO's Examining Attorney reviewed the photo above and rejected it as proof of use solely on the basis that "[s]howing the applied-for mark from inside a retail store does not support

retail store services[,]" and "[u]se of the applied-for mark on a wall above product does not support retail store services . . ."  Royce Decl. Ex. 1, at 10.  She *did not* reject the photograph on the basis that it evidenced illegal use, nor did she require JARS to clarify its description of services.  Instead, she asked JARS to submit an alternative specimen.  Royce Decl. Ex. 1, at 30.  JARS complied with the PTO's request on September 21, 2020.  The PTO accepted the substitute specimen on January 7, 2021, and registered the JARS mark on February 9, 2021.  Glass Jar is asking the Court to look at the same evidence considered by the PTO, and find unlawful use where the PTO found none.  What Glass Jar is asking the Court to do is untenable.

Moreover, Glass Jar concedes that services that involve certain cannabis products are not illegal if those products adhere to the requirements of the 2018 Farm Bill.  Def's Mot. 8.  Yet, entirely absent from Glass Jar's Motion is any allegation that the retail services referred to in the '355 Registration involve hemp, marijuana, or cannabis that fail to comply with the requirements of the 2018 Farm Bill.  Thus, what Glass Jar is actually asking the Court to do is assume that the content of the hemp referenced in the '355 Registration does not adhere to the requirements of the Farm Bill, without actually stating or making a claim in the Motion that it runs afoul of these requirements – and without proffering any credible evidence of illegal use..

Indeed, Glass Jar' must fail because it has no facts to support such an allegation at this initial pleading stage.  *See Glob. Licensing, Inc. v. Namefind LLC*, No. 21-CV-11101, 2022 WL 274104, at *4 (E.D. Mich. Jan. 28, 2022) (In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record.")  Under the law, the presumption is in favor of the JARS Marks being used lawfully.  *Brown*, 119 U.S.P.Q. 2d at 1350, 2016 WL 4140917 at *2 ("the USPTO

presumes that an applicant's use of mark in commerce is lawful under federal law"). Simply put, Glass Jar's hollow, unsupported and, at times, entirely untruthful statements, cannot overcome this presumption.

Finally, Glass Jar's reliance on *Brown*, is as unavailing as its other augments. In *Brown*, the TTAB affirmed the examining attorney's refusal for registration of HERBAL ACCESS for retail store services featuring herbs in Class 35. *See Brown*, 119 U.S.P.Q. 2d at 1350, 2016 WL 4140917 at *2. The TTAB noted that there is a presumption of lawful use and registration will not be refused unless either: (1) a violation of federal law is indicated by the application record or other evidence, such as when a court or a federal agency responsible for overseeing activity in which the applicant is involved, and which activity is relevant to its application has issued a finding of noncompliance under the relevant statute, or (2) when the applicant's application relevant activities involve a per se violation of law. *Id*. In *Brown*, the Examining Attorney asserted a per se violation of federal law based on the specimen submitted and website evidence showing that the HERBAL ACCESS marks was used in connection with the provision of marijuana. *Id*. at 2-3. Because *Brown* was decided two years prior to the enactment of the 2018 Farm Bill, any reference by the applicant to the a HERBAL ACCESS marks being used in connection with marijuana would have been a per se violation of law, since there were no exceptions making certain hemp, cannabis and marijuana products lawful. *Id*. at 4. Here, unlike in *Brown*, there is no violation of federal law on the application record or other evidence. Moreover, because there is no evidence of a per-se violation of law, or evidence of a violation of federal law in JARS' application record, the decision in *Brown* is inapplicable to this case.

For all of the foregoing reasons, Glass Jar's Motion should be denied, as the PTO did not erroneously issue the JARS Marks or registration.  There is no basis to dismiss the Complaint or cancel the '355 Registration.

**C.      Glass Jar Has Failed To Establish That The '355 Registration Is Used Or Was Registered In Violation Of The Unlawful Use Doctrine**

By asserting that the '355 Registration was erroneously issued and that JARS has admitted to unlawful use, Glass Jar is asking the Court to adopt the Trademark Trial and Appeal Board's Unlawful Use Doctrine.  The Unlawful Use Doctrine denotes a "policy of the PTO's Trademark Trial and Appeal Board [which holds] that use [of a mark] in commerce only creates trademark rights when the use is lawful." *CreAgri, Inc. v. USANA Health Sciences, Inc*., 474 F.3d 626, 630 (9th Cir. 2007).  District Courts that have adopted the TTAB's Unlawful Use Doctrine find unlawful use where: (i) a government agency or court previously found noncompliance with a federal law or agency rule; or (ii) a per se violation of federal law has occurred.  *NYcityVAN LLC v. Thomas* 501 F. Supp.3d 145, 149 (2020) (citing *Satine Societa in nome Collettivo Di S.A. e.M. Usellini v. P.A.B Produits et Appareils De Beaute*, 209 U.S.P.Q 958, 964 (TTAB 1981)).  "Regardless of which route is chosen, the party alleging unlawful use must show that the other party's noncompliance was 'material.'  *Id*.  This means it must be of such 'gravity and significance that the usage [of the mark] must be considered unlawful,' and there must be some 'nexus' between the alleged regulatory violations and the use of the mark;  *Id*.  (citing *Dessert Beauty, Inc. v. Fox* 617 F.Supp.2d 185, 190 (S.D.N.Y. 2007)).   "'[T]he proofs submitted by the party charging noncompliance must leave no room for doubt, speculation, surmise or interpretation' and be supported by 'clear and convincing evidence.'" *Id*. (citing *Satinine*, 209 U.S.P.Q. at 965).

Here, Glass Jar has failed to support its allegations of unlawful use by any credible evidence, let alone clear and convincing evidence.  Glass Jar's entire argument is based on

conjecture.  Glass Jar has failed to provide any evidence of a per se violation of federal law or any evidence that a government agency or court previously found noncompliance with federal law. Glass Jar's arguments of illegality fail under the Unlawful Use Doctrine.  JARS' complaint should not be dismissed and the '355 Registration should not be cancelled.

**D.     This Court Should Exercise Supplemental Jurisdiction Over JARS' State Law Claims.**

Glass Jar's argument that the Court should decline to exercise supplemental jurisdiction over JARS' state law claims is based entirely on Glass Jar's unsupported arguments that the Complaint should be dismissed because: (a) the hemp-based products identified in the '355 Registration are supposedly illegal; (b) the PTO erroneously issued the '355 Registration because it allegedly failed to properly review a photograph JARS submitted during the application process; and (c) by using the word "cannabis" in the complaint JARS' really meant illegal marijuana that does not comply with any of the exceptions listed in the 2018 Farm Bill.  As already discussed, Glass Jar's arguments have no basis.  The Court can, and should, exercise supplemental jurisdiction over JARS' state law claims.

Glass Jar further argues that even if the federal claims are not dismissed, the Court should still refuse to exercise jurisdiction over the state law claims because: (i) JARS should not be permitted to use a purported *de minimis* sale of hemp and accessories to gain access to "federal courthouse doors to pursue its primary claims involving substances that are illegal under federal law." Def.'s Mot. 11; and (ii) the Complaint presents an "exceptional circumstance" to justify rejection of supplemental jurisdiction.  *Id.*  Both arguments are entirely without merit.

As already explained, Glass Jar has provided no credible evidence that products sold under the JARS Marks are illegal, or that the products identified in the '355 Registration, are illegal under federal law and.  This should end the analysis because the argument fails.

Second, Glass Jar seems to suggest that the "exceptional circumstance" here is that "jury confusion can and will result from substantial differences in federal and state law with respect to their respective treatment of marijuana, and the enforcement of marijuana-related trademarks." This argument is nonsensical.  Indeed, if this were the case, no federal court would exercise supplemental jurisdiction over state law claims in any case involving cannabis or hemp.

### E.     The Michigan Consumer Protection Act is Applicable to Glass Jar's Conduct and JARS Has Pled Sufficient Facts to that Effect

Glass Jar argues that it should be immune from the restrictions of the MCPA because it is licensed by the Cannabis Regulatory Agency ("CRA"). Def.'s Mot. 12. In support of its argument, it cites §445.904(1) of the MCPA, which states it is inapplicable to "a transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Glass Jar interprets the statute to provide that marijuana businesses cannot be held liable for violations of law under the MCPA because they are licensed by the CRA, and heavily regulated by The Michigan Medical Marihuana Act ("MMMA"), The Medical Marihuana Facilities Licensing Act ("MMFLA"), and The Michigan Regulation and Taxation of Marihuana Act ("MRTMA").  Glass Jar fails to cite any case interpreting the MCPA in connection with a company licensed by the CRA. [2]

---

[2] Glass Jar also fails to provide any evidence supporting its assertion that it is licensed by the CRA and regulated by any of the foregoing statutes While Glass Jars submitted a declaration with its Motion, that declaration only references the prosecution history of the '355 Registration.  It provides no evidence that Glass Jar is regulated by the CRA.

Glass Jar's assertion that it may conduct illegal activity because it is in a heavily regulated industry is erroneous, overly broad, and not supported by case law.  While the CRA, MMA, MMFLA and the MRTMA generally regulate a marijuana business, they do not specifically regulate trademark infringement.  Glass Jar has cited no statute or case establishing that the CRA regulates trademark usage[3], issues of infringement or confusing similarity between trademarks.  Consequently, Glass Jar is not exempt from the MCPA.

In *Attorney Gen. v. Diamond Mortg. Co.,* 414 Mich. 603, 607 (1982*)* the defendant real estate broker advertised and offered loans to homeowners at eleven percent interest.  The financing agreement resulted in the real estate broker receiving a prepaid finance fee that the Attorney General alleged was a usurious interest charge.  *Id*.  The attorney general also alleged that the real estate broker used confusing and inconsistent forms and that its method of doing business violated the MCPA.  *Id*.

The defendant real estate broker argued that it was exempt from the MCPA because as a real estate broker he was licensed by the Department of Licensing and Regulation.  *Id*. at 608.  *Diamond Mortg*. 414 Mich. at 615, 327 N.W.2d at 811.  The court held that the defendant's license did not exempt it from the MCPA. *Id*.  at 617.  While the license generally authorized the defendant to engage as a real estate broker, it did not authorize the conduct that plaintiff alleged violated the Michigan Consumer Protection Act.  *Id*.

Similarly, in *Baker v. Arbor Drugs, Inc.,* 215 Mich. App. 198, 207 (1996).the plaintiff sued a pharmacy for violating the MCPA, alleging the defendant deceptively advertised its computer

---

[3] While the CRA sets out certain packaging requirements for certain marijuana products, those requirements focus on labeling THC levels, identifying addresses, product names, weight, ingredients and avoiding confusion with candy.  These rules do not address trademark infringement and specifically provide for the application of relevant local state and federal laws.  Cannabis Regulatory Agency, Rule 33 Requirements and Restrictions on marihuana infused products; edible marijuana product. https://www.michigan.gov/cra/rules/rule-33--requirements-and-restrictions-on-marihuana-infused-products-edible-marijuana-product-.

software system that harmed the plaintiff by failing to identity a harmful drug effect. *Id*. The court in Baker did not apply the MCPA exception because, though the pharmacy was heavily regulated by the state Board of Pharmacy, advertising was not within the purview of the Pharmacy Board's regulatory power. *Id*. at 208.

Here, the MCPA is applicable to Glass Jar's conduct. The fact that Glass Jar is licensed by the CRA and is in a heavily regulated industry is of no consequence. While the CRA may license Glass Jar's marijuana related activities, its infringement of JARS' trademarks is separate and distinct from the activity for which it is licensed. Glass Jar is subject to the MCPA.

## IV.   CONCLUSION

For the reasons stated herein, Glass Jar's motion to dismiss and motion to cancel should be denied. Glass Jar's complaint adequately states a claim for trademark infringement, unfair competition, and violation of the MCPA.

Dated: July 18, 2022                    Respectfully submitted,

**JARS Holdings, LLC d/b/a JARS Cannabis**

By:    */s/ Marcus S. Harris*
       One of Its Attorneys

Marcus S. Harris (*pro hac vice* admission pending)
mharris@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JARS Holdings, LLC d/b/a JARS Cannabis, ) | CASE NO.  2:22-cv-11102-DML-DRG |
| ) | |
| Plaintiff, ) | JUDGE  David M. Lawson |
| ) | |
| v. ) | |
| ) | |
| Hempnotize LLC d/b/a Glass Jar Cannabis ) | |
| and Glass Jars, ) | PLAINTIFF'S   RESPONSE   IN |
| ) | OPPOSITION   TO   DEFENDANT'S |
| Defendant. ) | MOTION TO DISMISS |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the Plaintiff, certifies that on July 18, 2022, caused the foregoing Response to Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record listed below.

Christopher R. Royce (counsel for Defendant) – chirs.royce@pollicella.net

Jacqueline Langwith (counsel for Defendant) – jacqueline.langwith@pollicella.net

/s/ Marcus S. Harris
Marcus S. Harris